UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

MARVIN BROWN,

               Petitioner,

   -vs-

JOHN J. DONELLI, Superintendent,
Bare Hill Correctional Facility

               Respondent.

**DECISION AND ORDER**
**No. 05-CV-6085**

───────────────────────────────────────

## I. INTRODUCTION

Petitioner, Marvin Brown ("Petitioner" or "Brown"), filed a timely petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, challenging the constitutionality of his custody, following a judgement entered in New York State County Court, Ontario County, on September 20, 2002. Petitioner was convicted, after a jury trial, of one count of criminal sale of a controlled substance in the third degree (New York Penal Law ("Penal Law") §220.39[1]), and one count of criminal possession of a controlled substance in the seventh degree (Penal Law §220.03). For the reasons set forth below, this petition is denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By indictment number 02-01-031, Petitioner was charged with one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the seventh degree, arising out of the following incident. On January 2, 2002, a confidential police informant, John

Wesley, went to 157 Genesee Street, in Geneva, New York, to purchase crack-cocain from Petitioner at the direction of the Geneva City Police Department. (T. 292, 299-300)[1]. Prior to leaving the police station for 157 Genessee Street, Geneva City police officers Hausner and Heieck searched Wesley, placed a wire in the inside pocket of his jacket, and gave him $50 to purchase the crack-cocaine. (T. 299-300). Officer Hausner followed Wesley in an unmarked police car to the location to observe the transaction. (T. 303). When Wesley arrived at 157 Genesee Street, Petitioner told Wesley that he did not want to sell drugs in front of the children at the residence, and he exited the apartment, walked westward up an adjacent street, and met Wesley approximately five minutes later at the corner of Colt and Genesee Streets. (T. 303-4, 353-4). Wesley then purchased a bag of crack-cocaine from Petitioner and returned to the police station. (T. 305-6). At the police station, Wesley received $40 for his role in the drug sale investigation, and the police confiscated the drugs and transported them to the Monroe County lab. (T. 308-9, 357). Petitioner was later arrested and indicted by a grand jury. (Arraignment Minutes at 2).

---

[1] "T." refers to the state court trial transcript.

In a pre-trial omnibus motion, Petitioner requested a <u>Darden</u>[2] hearing and a hearing to determine whether the police had probable cause based on the information the confidential informant provided the police. (Minutes of Pre-trial Motions at 2-6). The trial court denied both requests following a pre-trial identification hearing in which Officer Hausner testified that he observed the transaction, and after the prosecution revealed the identity of the confidential informant, John Wesley, and disclosed that Wesley would be a trial witness. (Minutes of Pre-trial Motion/Hearing at 42).

The trial court also conducted a <u>Sandoval</u>[3] hearing. The court ruled that the prosecution could inquire about a previous misdemeanor conviction for criminal possession of a controlled substance in the seventh degree, a prior conviction for attempted criminal impersonation, and a prior juvenile delinquency proceeding involving theft. (Minutes of <u>Sandoval</u> Hearing at 22). Petitioner also made a motion *in limine* to exclude any uncharged crimes that may have led to the instant investigation. (Minutes of Pre-trial

---

[2] A <u>Darden</u> hearing is an *in camera* hearing in which the trial court judge can examine a confidential informant to determine whether he exists, whether he is reliable and credible, and whether the police had probable cause based on the information provided by the confidential informant. This hearing is conducted *in camera* to preserve the anonymity of the informant. See <u>People v. Darden</u>, 34 N.Y.2d 177, 181-82 (N.Y. 1974).

[3] A <u>Sandoval</u> hearing is based on the New York State Court of Appeals' decision in <u>People v. Sandoval</u>, 34 N.Y.2d 371(1974), that a trial judge may determine the use which may be made of the defendant's prior convictions or proof of the prior commission by the defendant of any specific criminal, vicious or immoral acts to impeach the defendant's credibility, should he take the stand.

Motions at 7-8). The trial court declined to rule on the motion until trial. Id. at 9.

Following a jury trial, Petitioner was convicted on both counts in the indictment. Petitioner appealed his conviction to the Appellate Division, Fourth Department, arguing that (1) the trial court erred in denying a Darden hearing and a hearing to determine probable cause; (2) John Wesley was an accomplice, and the trial court should have instructed the jury that his testimony required corroboration; (3) he received ineffective assistance of counsel because counsel failed to ask for an instruction regarding the corroboration of Wesley's testimony; (4) the trial court erred in failing to grant Petitioner's motion *in limine* to exclude uncharged crimes; (5) the trial court erred in its Sandoval ruling, affecting Petitioner's decision to testify; (6) the trial court abused its discretion in failing to grant Petitioner's motion to dismiss based on discrepancies in the testimony regarding the weight of the cocaine; and (7) his sentence should be modified in the interest of justice. See People v. Brown, 2 A.D.3d 1423 (4th Dept. 2003, Brief for Defendant-Appellant at 4-5. The Appellate Division unanimously affirmed his conviction, holding that the trial court properly denied a Darden hearing; the conviction was supported by legally sufficient evidence and testimonial inconsistencies are an issue of weight, not admissibility; the confidential informant was not an accomplice as a matter of law and therefore, corroboration was unnecessary; the court's curative instruction following testimony

regarding uncharged crimes cured any error that may have occurred through the court's failure to rule on Petitioner's motion *in limine*; the sentence should not be reduced; and that Petitioner's remaining claims lacked merit. Brown, 2 A.D.3d at 1424-5. The New York State Court of Appeals denied further review. People v. Brown, 1 N.Y.3d 625 (N.Y. 2004).

### III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

#### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

*dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer,

-6-

540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. §2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.   The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is

-7-

actually innocent of the crime for which he has been convicted." Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariable be resovled first; only that is ordinarily should be[,]'" (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

## IV. PETITIONER'S CLAIMS

**1. Fourth Amendment Violations**

Petitioner first claims that the introduction of evidence obtained in violation of his Fourth Amendment rights led to his conviction. Pet. ¶ 22A.[4] Specifically, Petitioner claims that the denial of a Darden hearing to examine the existence and credibility of the confidential informant and the denial of a hearing to

---

[4] "Pet." refers to Brown's petition for a writ of habeas corpus.

determine whether the police had probable cause to arrest Petitioner, violated Petitioner's Fourth Amendment right to be free of unreasonable seizures. Id.

The Supreme Court has held that as long as a State "has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465, 481-82, (1976). The Second Circuit refined Stone v. Powell to allow federal habeas review of Fourth Amendment claims only in two situations: (1) when the State "has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations"; or (2) when the State "has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992). In Capellan, the Second Circuit also recognized that New York Criminal Procedure Law ("C.P.L.") §710.10 et seq., New York's procedure for litigating Fourth Amendment claims, is "facially adequate" to satisfy this test. Id. Therefore, a petitioner convicted in New York will be entitled to habeas relief only if the trial court did not allow the petitioner to avail himself of the C.P.L. §710.10 et seq. procedures, or if there was an "unconscionable breakdown" in their application.

In this case, Petitioner made an omnibus motion in which he requested Darden and probable cause hearings. The trial court heard arguments and reviewed case law prior to trial and determined that because the informant could be cross-examined at trial, and because there was other evidence connecting the defendant to the crime, a Darden hearing was not required. (Minutes of Motion/Hearing at 16). Additionally, the trial court ruled that a hearing to determine probable cause was unnecessary because Officer Hausner witnessed the transaction. Id. Petitioner appealed this ruling to the Appellate Division, Fourth Department, who upheld the trial court's decisions. Brown, 2 A.D.3d at 1424, *leave denied*, 1 N.Y. 3d 625 (N.Y. 2004). Petitioner was given the opportunity to avail himself of the procedures of C.P.L. §710.10 et seq. through his pre-trial motions and subsequent appeals, and he was not denied his Fourth Amendment rights simply because a hearing was not granted, as this is not an "unconscionable breakdown" in the application of the C.P.L. §710.10 et seq. procedures. See Ferron v. Goord, 255 F. Supp.2d 127, 131-32 (W.D.N.Y. 2003). Therefore, Petitioner had a "full and fair opportunity" to litigate his Fourth Amendment claim, and is not entitled to habeas relief.

**2. Ineffective Assistance of Trial Counsel**

Petitioner next claims that he was denied effective assistance of trial counsel because counsel failed to request a jury instruction that the confidential informant was an accomplice, whose testimony required corroboration under New York State law.

Pet. ¶ 22B. Petitioner raised this claim on direct appeal, and the Appellate Division held that it was without merit. Brown, 2 A.D.3d at 1425, *leave denied*, 1 N.Y. 3d 625 (N.Y. 2004).

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense. The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." Strickland v. Washington, 466 U.S. 668, 685(1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687. To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." Id., 466 U.S. at 687. To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id., 466 U.S. at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort... to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [] have ... a pervasive effect on the inferences to

-11-

be drawn from the evidence, altering the entire evidentiary picture." Id. at 695-96. Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome . . . would have been different[.]" McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome," Strickland, 466 U.S. at 688; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.*, 466 U.S. at 693. Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

In this case, defense counsel's failure to request an accomplice instruction does not rise to the level of ineffective assistance of counsel under Strickland. Counsel could have reasonably concluded that a confidential informant assisting the police in criminal investigations, and engaging in criminal activity at the direction of the police, would not be an accomplice as a matter of law, and therefore any request for an accomplice charge would be futile. Additionally, it cannot be argued that the outcome of Petitioner's case would have been different because there was substantial other evidence connecting Petitioner to the crime, specifically, Officer Hausner's testimony that he arranged for the informant to purchase the drugs and he observed the drug

sale. (T. 292-305). Therefore, this court agrees with the Appellate Division that Petitioner's claim for ineffective assistance of counsel is without merit.

**3. Prosecutorial Misconduct and Erroneous Admission of Evidence**

Petitioner next claims that he was denied due process because the prosecutor elicited testimony from a witness that Petitioner was involved in prior, uncharged sales of narcotics, and because the court failed to rule on his motion *in limine* to exclude such testimony. Pet. ¶ 22C. Petitioner's claim involves the following exchange between the prosecutor and Officer Hausner at trial:

> Q: Okay. Now, back on January 2nd, 2002, did you prepare –or what did you do to prepare Mr. Wesley for what was then going to be happening around six or a little bit later in the evening?
>
> A: Mr. Wesley came into the police department. We spoke with Mr. Wesley on who was selling drugs in the City of Geneva. He indicated that a subject named [Brown] that lived on 157 Genesee Street, apartment number 2 was – would sell to him, narcotics. (T. 292-3).

To constitute a denial of due process based on prosecutorial misconduct, the prosecutor's actions must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 182 (1986); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990). "In evaluating whether allegedly improper [actions] by the prosecutor are grounds

for reversal, the fundamental question is whether, if there was misconduct, it caused substantial prejudice to the defendant, thereby depriving him of his right to a fair trial." United States v. LaMorte, 950 F.2d 80, 83 (2d Cir. 1991) (citing United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), *cert. denied*, 479 U.S. 827 (1986)). In determining the degree of prejudice to a petitioner, the factors to consider are the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct. United States v. Young, 470 U.S. 1(1985); La Morte, 950 F.2d at 83; United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981).

Similarly, an erroneous admission of evidence will not deny a defendant due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." Dowling v. United States, 493 U.S. 342, 352 (1990) (internal quotation marks omitted). For the erroneous admission of unfairly prejudicial evidence to amount to a denial of due process, it must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted); Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant" (internal quotation marks omitted)).

In this case, the prosecutor's question does not rise to the level of misconduct that would deny the Petitioner a fair trial.

-14-

Similarly, the alleged prejudice to Petitioner created by Officer Hausner's response, alluding to the fact that the police and John Wesley were aware that Petitioner sold drugs previously, did not deny Petitioner due process because the court promptly instructed the jury to disregard the testimony. (T. 296-299). This Court must assume that the jury followed the trial court's instructions. See Zafiro v. United States, 506 U.S. 534, 540 (1993). Therefore, the curative instruction by the trial court was sufficient to cure any alleged prejudice and this court finds that the Petitioner was not denied due process through the prosecutor's question or through the trial court's failure to rule on Petitioner's motion *in limine* prior to trial.

**4. Petitioner's Right to Testify**

Petitioner, who did not testify at trial, claims that his right to testify was impaired by the trial court's Sandoval ruling. Pet. ¶ 22D. Allegedly erroneous Sandoval rulings are not cognizable on federal habeas review where the claimant did not testify at trial. See Luce v. United States, 469 U.S. 38, 41-43 (1984); see also Brumfield v. Stinson, 297 F. Supp.2d 607, 619-20. Because Petitioner did not testify at trial, his claim for habeas relief based on the trial court's Sandoval ruling is denied.

**V. CONCLUSION**

For the reasons stated above, Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are

-15-

not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

ALL OF THE ABOVE IS SO ORDERED.

                                                s/Michael A. Telesca
                                                MICHAEL A. TELESCA
                                            United States District Judge

DATED:    Rochester, New York
           October 16, 2009